UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHARON BUTLER-CHARLES,

      Plaintiff,

      v.

CITY OF BOSTON,

      Defendant.

No. 25-cv-12235-JDH

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

HEDGES, M.J.

On August 8, 2025, *pro se* Plaintiff Sharon Butler-Charles filed a complaint against her former employer, Defendant City of Boston ("the City"), alleging employment discrimination on the basis of age, sex, and race. Docket No. 1. On October 21, 2025, the City moved to dismiss the complaint for failure to state a claim. Docket No. 10. I held a hearing on the City's motion on December 23, 2025, and took the motion under advisement. Docket No. 19.

I now find that Ms. Butler-Charles' state law claims are barred by the statute of limitations, and that Ms. Butler-Charles' federal discrimination claims based on the theory of failure to hire are not viable, as she has not alleged that she was denied an available position. The City's motion is thus GRANTED as to those claims and theories of liability.

Ms. Butler-Charles may proceed, however, with her federal age discrimination claims, because the City failed to make any argument as to those claims in its briefing. Ms. Butler-Charles may also proceed with her federal race and sex discrimination claims based on denial of a pay raise, constructive discharge, and hostile work environment, as she has plausibly pled all elements of those claims. The City's motion is thus DENIED as to those claims.

## I.     FACTUAL BACKGROUND

The following facts are drawn from Ms. Butler-Charles' complaint, and from the documents attached to the complaint.  *See Cheng v. Neumann*, 51 F.4th 438, 441, 445 (1st Cir. 2022) (drawing facts from complaint attachments to resolve motion to dismiss).  Ms. Butler-Charles began working in the City of Boston's Assessing Department, Tax Policy Unit, as a Senior Administrative Analyst in June 2016.  Docket No. 1 at 4; Docket No. 1-3 at 8.  In 2018, after a change in management, Nicholas Ariniello assumed leadership of the department.  Docket No. 1 at 4.  Ms. Butler-Charles alleges that under Mr. Ariniello's leadership, she "endured discrimination, bullying, intimidation, sabotage and character assassination."  *Id*.  She states that other women over 55, including at least one other Black woman, experienced similar treatment. *Id*. at 4-5.  Ms. Butler-Charles alleges that from 2018-2021, she "performed in the role of the [t]ax [p]olicy [d]irector . . . <u>without</u> financial compensation," and that "Mr. Ariniello blocked [her] advancement within [her] unit, <u>but</u> expected [her] to meet [and] function in the role of the tax policy director" without her salary reflecting her responsibilities.  *Id*. at 4 (emphasis in original).  Ms. Butler-Charles alleges that three other women over the age of 55 filed complaints with the Massachusetts Commission Against Discrimination (the "MCAD") and that she and those women "all subsequently departed from the assessing department due to the ongoing abuse [and] stress, discrimination, and bullying."  *Id*. at 5.

As exhibits to her complaint, Ms. Butler-Charles attaches several documents she filed with the MCAD, which include the following additional allegations:

- In June 2019, Mr. Ariniello told Ms. Butler-Charles to stop communicating directly with colleagues above her paygrade, as doing so constituted

insubordination.  Docket No. 1-3 at 11.  However, Mr. Ariniello did not place similar restrictions on the rest of his staff.  *Id.*

- In April 2020, Mr. Ariniello hired a "white male in his [thirties]" to shadow Ms. Butler-Charles and train to take over her job.  *Id*. at 11, 27.

- In July 2020, although Ms. Butler-Charles had no prior work performance issues, Mr. Ariniello suspended her for one day.  *Id*. at 11.  The suspension was ultimately deemed unwarranted and expunged from her record after arbitration. *Id*. at 11-12, 27.

- In August 2020, Mr. Ariniello invited Ms. Butler-Charles to a "routine 'check-in' meeting" where he chastised her for being "disrespectful" for trying to talk to him and told Ms. Butler-Charles that "he could suspend [her] again if he wanted to." *Id.* at 11.

- Mr. Ariniello declined to provide formal performance reviews to Ms. Butler-Charles and said she would never earn anything more than "meet expectations." *Id.* at 12, 24.

- Mr. Ariniello blocked Ms. Butler-Charles' promotion to tax policy director, although she was expected to, and did, perform the duties of this role for years, by appointing another, less-qualified employee as interim tax policy director, and not formally opening the position.  *Id.* at 12, 32.

- On April 30, 2021, Mr. Ariniello "made a very racist disparaging remark regarding the sitting Mayor at the time, Madame Mayor Kim Janey."  *Id.* at 12. Specifically, Mr. Ariniello noted that Mayor Marty Walsh's name had not been replaced with Mayor Janey's name on Payment in Lieu of Tax (PILOT) Program

3

notices, and Mr. Ariniello said he could not mail the notices because, "[y]ou know how they are, they would make a big deal about it, especially since it's me." *Id*. at 13, 31.  Mr. Ariniello then said, "I shouldn't have said that." *Id*. at 13, 31.

- "Dating back to 2018, Mr. Ariniello … made a number of disparaging, racist, bigoted, discriminatory [re]marks towards [Ms. Butler-Charles] and others when referring to people of color, specifically women of color, i.e. 'you people,' 'you guys,' '[t]hey'll make a big deal about everything, you know how they are,' 'they'll just confuse you if you talk to them' remarks." *Id*. at 29.

- Under Mr. Ariniello's leadership, for approximately two-and-a-half years, Ms. Butler-Charles "suffered mentally and emotionally" from "abuse rang[ing] from staging fake reprimands intended to jeopardize [Ms. Butler-Charles'] employment to expecting [Ms. Butler-Charles] to systematically facilitate the Tax Policy initiatives at the director level, but without compensation or an opportunity to officially serve in that role." *Id.* at 13.

- On November 30, 2021, Ms. Butler-Charles "departed from the assessing department due to the ongoing abuse [and] stress, discrimination and bullying." *Id*. at 8; Docket No. 1 at 5.

## II.    PROCEDURAL HISTORY

On September 13, 2021, Ms. Butler-Charles filed a complaint with the MCAD alleging discrimination based on race, sex, and age.  Docket No. 1-3 at 8.  After an investigation, on December 27, 2024, the MCAD dismissed the complaint based on a lack of probable cause.  *Id*. at 6-9.  Ms. Butler-Charles appealed, and after a preliminary hearing, an MCAD Investigating

Commissioner affirmed the dismissal on April 25, 2025.  Docket No. 11-1.[1]  The claims then proceeded to the U.S. Equal Employment Opportunity Commission ("EEOC").[2]  On May 16, 2025, the EEOC declined to investigate Ms. Butler-Charles' case further, noting that it "ma[de] no determination about whether further investigation would establish violations of the statute" and issued a "Right to Sue Letter," informing Ms. Butler-Charles that she must file a lawsuit within ninety days of receipt of the notice.  Docket No. 1-3 at 1-2.

Ms. Butler-Charles filed a complaint with this court on August 8, 2025.  Docket No. 1. The City filed a motion to dismiss on October 21, 2025.  Docket No. 10.  In its motion, the City argues that Ms. Butler-Charles fails to state a claim for race or sex discrimination because she does not sufficiently allege that she suffered any adverse employment action.  Docket No. 11 at 6-8.  The City further argues that even if she had plausibly alleged an adverse employment action, Ms. Butler-Charles fails to allege a causal connection to her "race, color, or sex."  *Id.* at 8-9.  Ms. Butler-Charles did not file a response to the City's motion.  After a hearing on December 23, 2025, I took the motion under advisement.  Docket No. 19.

## III.    LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint states a claim for which relief can be granted. *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020).  "[A] defendant's burden of persuasion 'is a heavy one when a motion to dismiss is filed.'"  *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech.*, Inc., 28 F. Supp. 3d 93, 103 (D. Mass. 2014) (citation omitted).  Reviewing the

---

[1] This document is attached to the City's motion to dismiss, not to the complaint.  Nonetheless, because it is central to Ms. Butler-Charles' claims and relied upon in the complaint, I consider it to be incorporated by reference. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[2] The parties do not identify the date when this occurred.

complaint as a whole, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *García-Catalán v. United States*, 734 F.3d 100, 102-03 (1st Cir. 2013). Furthermore, *pro se* complaints are to be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citation omitted)).

## IV.    ANALYSIS

Although Ms. Butler-Charles does not specify a cause of action in her complaint, *see generally* Docket No. 1, the documents attached to her complaint and incorporated by reference indicate that before the MCAD, Ms. Butler-Charles asserted claims of: (1) disparate treatment, and (2) a hostile working environment; on the basis of race, sex, and age; in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and Massachusetts General Law Chapter 151B ("Chapter 151B"). *See* Docket No. 1-3 at 8-9. The City acknowledges that the allegations in Ms. Butler-Charles' federal court complaint are "substantially the same" as those she brought before the MCAD, *see* Docket No. 11 at 3, and at the motion hearing, Ms. Butler-Charles confirmed that she intended for her complaint to assert the above-named claims. Because Ms. Butler-Charles is proceeding *pro se,* I construe her complaint liberally to plead the statutory causes of action she brought before the MCAD. *See Erickson*, 551 U.S. at 94 (construing *pro se* plaintiff's complaint liberally in reversing dismissal and noting that plaintiff "bolstered his claim by making more specific allegations in documents attached to the complaint and in later filings").

### A.  Chapter 151B Claims

Although not raised in the City's brief, I note that Ms. Butler-Charles' state law claims are time-barred by the statute of limitations.[3]

A plaintiff may not pursue employment discrimination claims arising under Chapter 151B in court until she has exhausted them before the appropriate administrative agency. *Rae v. Woburn Pub. Schs.,* 113 F.4th 86, 99 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 1431 (2025) (citing *Dunn v. Langevin*, 211 N.E.3d 1059, 1062 (Mass. 2023)).   To administratively exhaust a Chapter 151B claim, an employee must file a timely complaint with the MCAD and then wait ninety days.  Mass. Gen. Laws. ch. 151B, § 9; *see also Rae,* 113 F.4th at 99.  After ninety days, but *"not later than three years after the alleged unlawful practice occurred,"* the employee may bring her claim to a court.  Mass. Gen. Laws. ch. 151B, § 9 (emphasis added); *see also Goldstein v. Brigham and Women's Faulkner Hosp., Inc*., 80 F. Supp. 3d 317, 324 (D. Mass. 2015).[4] "Chapter 151B does not mandate that a plaintiff await receipt of a right-to-sue letter from MCAD or completion of the MCAD investigation before they file suit." *Rae,* 113 F.4th at 99. Rather, "[a] plaintiff may proceed to court if they have not received a response from MCAD after ninety days of filing their MCAD charge."  *Id*.  The MCAD's review process runs independently from, and thus does not toll, the statute of limitations under Mass. Gen. Laws. ch.

---

[3] The Court may consider this issue *sua sponte*.  *See Jones v. Bank of New York as Tr. for Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2004-7*, 542 F. Supp. 3d 44, 58 n.9 (D. Mass. 2021) ("Although defendants have not raised the statute of limitations defense, the Court is empowered to consider the issue sua sponte."); *Cardona Del Toro v. United States*, 983 F.2d 1046, 1046 (1st Cir. 1993) ("[N]ot only is … a waiver [of a limitations defense] inapplicable to the power of the court to dismiss a claim on its own motion, but the mandate of Fed. R. Civ. P. 8(c) requiring affirmative defenses to be set forth in a responsive pleading does not apply to a motion to dismiss." (citation omitted)).

[4] If the MCAD investigation remains ongoing at this point, filing in court will trigger dismissal of the MCAD action.  Mass. Gen. Laws. ch. 151B, § 9.  An employee may also choose to proceed with the MCAD investigation process and then appeal a final decision to the superior court.  Mass. Gen. Laws. ch. 151B, § 6.

151B, § 9. *Poirier v. Massachusetts Dep't. of Corrections*, 186 F. Supp. 3d 66, 69 (D. Mass. 2016), *aff'd*, No. 16-1587, 2018 WL 11337451 (1st Cir. Feb. 22, 2018).

Here, Ms. Butler-Charles filed a complaint with the MCAD on September 13, 2021. *See* Docket No. 1-3 at 8. The MCAD issued a lack of probable cause finding on December 27, 2024, and Ms. Butler-Charles filed a timely notice of appeal on January 15, 2025. *See* Docket No. 1-3 at 8-11. The investigating commissioner affirmed dismissal of Ms. Butler-Charles' complaint on April 25, 2025. *See* Docket No. 11-1. The EEOC then declined to investigate further, dismissing the charge and issuing a right-to-sue letter on May 16, 2025. See Docket No. 1-3 at 1-2. Ms. Butler-Charles filed suit in federal court on August 8, 2025. Docket No. 1. Although Ms. Butler-Charles' complaint does not specify when the alleged discriminatory conduct occurred, she filed her claims with the MCAD on September 13, 2021, and left her position with the City on November 30, 2021. *See* Docket No. 1-3 at 8. Any challenged conduct must have occurred on or before that date—nearly four years before Ms. Butler-Charles initiated an action in this Court.

In short, Ms. Butler-Charles did not file suit in court within three years of the alleged unlawful practice, as required under Chapter 151B. Accordingly, Butler-Charles' Chapter 151B claims are DISMISSED with prejudice. Ms. Butler-Charles may not continue to pursue her state law discrimination claims in federal court.[5]

**B. Preclusion**

Before proceeding to the merits of Ms. Butler-Charles' federal discrimination claims, I first address the issue of preclusion. The City argues that this Court must give preclusive effect

---

[5] Dismissal with prejudice is required where, as here, the statute of limitations precludes the claim and thus the defect in the claim cannot be remedied. *In re Fresenius Granuflo/Naturalyte Dialysate Products Liab. Litig.*, 76 F. Supp. 3d 279, 288 (D. Mass. 2015).

to the MCAD's factual findings.  Docket No. 11 at 1, 2 n.3, 7.  However, the very case the City cites to support this proposition explicitly states that factual findings by state administrative agencies are not entitled to preclusive effect with respect to Title VII claims.  *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 794, 796 (1986) (considering whether "the Sixth Circuit erred in holding that state administrative factfinding is never entitled to preclusive effect in actions under Title VII or the Reconstruction civil rights statutes" and concluding that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d 31, 39 (1st Cir. 1998) ("It is now settled . . . that [s]tate agency findings that are not reviewed by a state court are not entitled to any preclusive effect in a subsequent action under Title VII"); *accord Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003) (citing *Univ. of Tenn.* and *Thomas,* and allowing plaintiff to use facts already considered by state administrative agency as evidence of disparate treatment in federal court).  In short, a plaintiff who adheres to relevant statutory requirements is entitled to *de novo* adjudication of her Title VII employment discrimination claims in federal court.  *Univ. of Tenn.*, 478 U.S. at 795-96.  The same is true of ADEA claims.  *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110 (1991) ("We reach the same result here, for the Age Act, too, carries an implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims.").  Therefore, unbound by the MCAD's factual findings, I proceed to consider whether Ms. Butler-Charles has alleged facts sufficient to sustain the federal employment discrimination claims alleged in her complaint.

## C.  Age Discrimination Claims

While the City states in its cover motion that it is moving to dismiss all claims, Docket No. 10 at 1, the City does not mention age anywhere in its brief, except in one sentence

acknowledging that Ms. Butler-Charles brought claims of age discrimination before the MCAD. Docket No. 11 at 2. The City argues that Ms. Butler-Charles "fails to establish a valid claim of race/color or sex discrimination," *id*. at 5, but it never argues that Ms. Butler-Charles failed to state a claim based on age discrimination. Accordingly, Ms. Butler-Charles' ADEA claims may proceed, and I will not consider them further in this order.[6]

### D. Race and Sex Discrimination Claims

The City argues that Ms. Butler-Charles has failed to state a claim for race or sex discrimination because she does not allege sufficient facts to show that she suffered an adverse employment action. Docket No. 11 at 6-8. The City further argues that even if she had plausibly alleged an adverse employment action, Ms. Butler-Charles fails to allege any connection to her "race/color, or sex." *Id*. at 8-9. For the foregoing reasons, I find that Ms. Butler-Charles has not plausibly alleged that she suffered an adverse employment action in the form of failure to promote. She has, however, pled allegations that, if true, could support claims for race and sex discrimination based on denial of a pay raise and constructive discharge.

#### a. Disparate Treatment

To make out a prima facie case for disparate treatment, Ms. Butler-Charles must show: "(1) she is a member of a protected class; (2) she was qualified for her position; (3) her employer took an adverse employment action against her; and (4) some evidence of a causal link between her protected status and the adverse employment action." *Evans v. Staples, Inc.*, 375 F. Supp. 3d 117, 123 (D. Mass. 2019) (citing *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011)).

---

[6] While I will allow the age discrimination claims to proceed because of the City's failure to argue for their dismissal, I caution that the likelihood of success on these claims appears low based on the paucity of age-related allegations in the complaint.

While Ms. Butler-Charles need not plead facts sufficient to establish a prima facie case at the pleading stage, the prima facie elements "are part of the background against which a plausibility determination should be made." *Evans*, 375 F. Supp. 3d at 123 (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)). Accordingly, Ms. Butler-Charles' complaint "'must allege a series of facts which at the very least gives rise to an inference of discriminatory animus.'" *Id*. at 124 (quoting *Johnson v. Gen. Elec.*, 840 F.2d 132, 138 (1st Cir. 1988), *abrogated on other grounds by Clockedile v. N.H. Dep't of Corr.*, 245 F.3d 1 (1st Cir. 2001)); *accord Salomon v. Mass. Hous. Fin. Agency*, No. 22-cv-10181-ADB, 2023 WL 2588334, at *11 (D. Mass. March 21, 2023) ("the complaint must set forth some facts indicating a relationship between the plaintiff's protected characteristic (such as age) and some adverse employment action taken against the plaintiff.") (cleaned up)). Here, the City does not dispute that Ms. Butler-Charles is a member of a protected class or challenge that she was qualified for her position. Docket No. 11 at 6. Thus, I proceed to the other two elements of her *prima facie* case.

### b. Adverse Employment Actions

"An adverse employment action is one that affects employment or alters the conditions of the workplace." *Stratton v. Bentley Univ.*, 113 F.4th 25, 38 (1st Cir. 2024) (cleaned up). On the face of Ms. Butler-Charles' complaint, she alleges that she suffered at least three adverse employment actions.[7]

### i.    Failure to Promote to Tax Policy Director

---

[7] The City argues that Ms. Butler-Charles' allegations regarding adverse employment actions "are a misrepresentation of the facts." Docket No. 11 at 7. But at the motion to dismiss stage, the question is not whether the plaintiff's allegations are *in fact* true. The question is, rather, whether the plaintiff's allegations, if accepted as true, state a claim for relief. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016).

First, Ms. Butler-Charles alleges that Mr. Ariniello denied her promotion to the position of tax policy director.  Docket No. 1 at 4-5.  Failure to promote can constitute an adverse employment action for purposes of a discrimination claim.  *Micheo-Acevedo v. Stericycle of Puerto Rico, Inc.*, 897 F.3d 360, 363 (1st Cir. 2018) (citation omitted).  However, to make out a prima facie case of racial discrimination in the failure-to-promote context, a plaintiff must show that "(i) she's a member of a protected class; (ii) she was qualified for the [p]osition; (iii) she applied to the [p]osition and wasn't hired; and (iv) the [p]osition was filled by someone with similar or inferior qualifications."  *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (citation omitted).  Ms. Butler-Charles does not allege that she applied for the position of tax policy director, or that an applicant with similar or inferior qualification received the position.  In fact, she concedes, in the attachments incorporated by reference into her complaint, that after 2019, the tax policy director position was "never posted" and that "there was no tax policy director."  Docket No. 1-3 at 23.  Because Ms. Butler-Charles has pled facts that, if true, would *defeat* her failure-to-promote theory, this theory of her claim is DISMISSED.

### ii.    Denial of Pay Raise

Second, Ms. Butler-Charles alleges that from 2018-2021, she was expected to perform the duties of tax policy director but did not receive a pay increase to reflect her new responsibilities.  Docket No. 1 at 4-5.  Denial of a pay raise can also constitute an adverse employment action for purposes of a discrimination claim.  *See Lockridge v. The Univ. Of Maine Sys.*, 597 F.3d 464, 470 (1st Cir. 2010) (assessing denial of pay raise as adverse employment action)*; see also Knox v. PPG Industries, Inc.*, No. 2:15-cv-1434, 2016 WL 279004, at *5 (W.D. Pa. Jan. 22, 2016) (denying motion to dismiss claims of employment discrimination based on employer's failure to provide pay raise when plaintiff assumed new position).  I find that Ms.

Butler-Charles has alleged a cognizable adverse employment action insofar as she has alleged denial of a pay raise when she *de facto* assumed a new position with increased responsibilities.[8]

### c.  Constructive Discharge

Third, Ms. Butler-Charles alleges that she "departed from the assessing department due to the ongoing abuse [and] stress, discrimination, and bullying." Docket No. 1 at 5. To the extent that she pleads that she was constructively discharged—that is, that "conditions were so intolerable that they rendered a seemingly voluntary resignation a termination," *Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 50 (1st Cir. 2008)—constructive discharge can also constitute an adverse employment action for purposes of a discrimination claim. *See Stratton*, 113 F.4th at 38-39. While *proving* constructive discharge is a high bar—*see, e.g., Walsh v. HNTB Corp.*, 169 F.4th 330, 342 (1st Cir. 2026)—at this stage, I find that Ms. Butler-Charles has stated enough facts to plausibly support a finding that her departure from the assessing department was prompted by "intolerable" conduct, and that she suffered an adverse employment action in the form of constructive discharge.

### d.  Causation

Because I find that Ms. Butler-Charles has alleged two adverse employment actions, I proceed to step four of the disparate treatment *prima facie* test and consider whether Ms. Butler-Charles has alleged "some evidence of a causal link between her protected status and the adverse employment action." *Evans*, 375 F. Supp. 3d at 123 (citing *Bhatti*, 659 F.3d at 70). To survive a motion to dismiss, Ms. Butler-Charles "need only state factual allegations that make it plausible" that she suffered adverse employment actions because of her race or sex. *Bodman v. Maine,*

---

[8] Whether Ms. Butler-Charles did, in fact, assume significant new responsibilities warranting a pay raise is a question of fact not appropriate to resolve at the motion to dismiss stage.

*Dept. of Health & Human Servs.*, 720 F. Supp. 2d 115, 121 (D. Me. 2010).

Ms. Butler-Charles alleges that Mr. Ariniello made numerous statements that could plausibly support an inference of race- and/or sex-based animus.  For example, Ms. Butler-Charles alleges that "[d]ating back to 2018, Mr. Ariniello has made a number of disparaging, racist, bigoted, discriminatory [re]marks towards me and others when referring to people of color, specifically women of color, i.e. 'you people,' 'you guys,' '[t]hey'll make a big deal about everything, you know how they are,' 'they'll just confuse you if you talk to them.'"  Docket No. 1-3 at 29.  Ms. Butler-Charles also alleges that on April 30, 2021, outside his office at City Hall, Mr. Ariniello made a disparaging remark about former Mayor Kim Janey.  *Id.* at 12.  In its motion to dismiss, the City cites the MCAD Investigating Commissioner's finding that Ms. Butler-Charles could only provide sufficient specificity as to one timely derogatory comment. Docket No. 11 at 3.  But Ms. Butler-Charles is entitled to *de novo* adjudication of her Title VII claims in federal court.  The question before me at this stage is whether Ms. Butler-Charles' allegations, if true, could support sex and/or race-based discrimination claims.  And if Ms. Butler-Charles' supervisor did, in fact, frequently speak about women of color in the above terms, it would not be implausible to infer that Ms. Butler-Charles suffered adverse employment actions because of her race and/or sex.

Therefore, the City's motion to dismiss is DENIED as to Ms. Butler-Charles' Title VII race- and sex-based disparate impact claims based on the theories of denial of a pay raise and constructive discharge.

### E.  Hostile Work Environment

Ms. Butler-Charles brought a hostile work environment claim before the MCAD, and at the motion to dismiss hearing, she confirmed that she wished to proceed with that claim in

federal court. The City, in turn, argued at the hearing that the hostile work environment claim should be dismissed, because Ms. Butler-Charles has failed to allege severe and pervasive conduct.

To prevail on a hostile work environment claim, a plaintiff must establish: (1) that she belongs to a protected class, (2) that she was subjected to harassment, (3) that the harassment was based on the plaintiff's membership in a protected class, (4) that the harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment, (5) that the objectionable conduct was both objectively and subjectively offensive, and (6) that some basis for employer liability has been established. *Ponte v. Steelcase, Inc.*, 741 F.3d 310, 320 (1st Cir. 2014).

While there is no precise test for what constitutes a hostile work environment, "courts must consider the totality of the circumstances," including the frequency and severity of the conduct, "whether it is physically threatening or humiliating, or a mere offensive utterance," and "whether it unreasonably interferes with an employee's work performance." *Posada v. ACP Facility Servs., Inc.*, 389 F. Supp. 3d 149, 157 (D. Mass. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Ultimately, "[t]he accumulated effect" of numerous offensive comments and acts taken together "can constitute a hostile work environment." *O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir. 2001). "While the plaintiff must ultimately prove all of the elements of her claims for hostile work environment … in order to prevail, the initial burden of demonstrating a claim of discrimination is not intended to be onerous and the plaintiff need not establish every element of the prima facie case at the pleading stage." *Posada,* 389 F. Supp. 3d at 158 (citing cases).

Again, the City does not dispute that Ms. Butler-Charles belongs to a protected class. As

15

to being subjected to harassment, Ms. Butler-Charles alleges that Mr. Ariniello singled her out and told her to stop communicating directly with superiors, hired an individual to shadow Ms. Butler-Charles and eventually take her job, suspended Ms. Butler-Charles for one day without cause and threatened that he could suspend her again if he wanted to, declined to provide her formal performance reviews, and forced her to perform the duties of tax policy director without compensation or recognition, while promoting a less-qualified person to supervise her. Docket No. 1-3 at 11-12, 24, 27. Adding all of these allegations together, I find that Ms. Butler-Charles has stated a plausible claim that she was subjected to harassment that altered the conditions of her work environment. And coupled with Ms. Butler-Charles' allegations that "Mr. Ariniello [ ] made a number of disparaging, racist, bigoted, discriminatory [re]marks towards [her] and others when referring to people of color, specifically women of color….,'" Docket No. 1-3 at 29, I find that she has plausibly alleged that the harassment was based on her membership in two protected classes. While the complaint and its attachments are light on specifics, "the Court need not assume at the pleading stage that the complaint lays out a fixed set of facts in support of her claims of discrimination," as "[f]urther facts in support of her claims of discrimination may be developed later through discovery." *Posada,* 389 F. Supp. 3d at 159. Subjectively, Ms. Butler-Charles has made clear that she found Mr. Ariniello's conduct offensive. Objectively, I find that a reasonable employee would be offended if they repeatedly heard their boss make statements demeaning of their race or sex, and then found that they were being shadowed by another employee that was training to take over their job, forbidden from speaking to superiors, and suspended. And because Ms. Butler-Charles alleges misconduct by a supervisor, I find that she has alleged a basis for the City's liability. *See, e.g., Noviello v. City of Boston*, 398 F.3d 76, 94-95 (1st Cir. 2005), *abrogated on other grounds by Stratton*, 113 F.4th at 43.

16

In conclusion, the City's motion to dismiss Ms. Butler-Charles' race- and sex-based hostile work environment claims is DENIED.  She may proceed with both claims.

## V.   CONCLUSION

For the foregoing reasons:

1. The City's motion to dismiss, Docket No. 10, is ALLOWED in part and DENIED in part.

2. Ms. Butler-Charles' Chapter 151B claims are DISMISSED with prejudice.

3. Ms. Butler-Charles' ADEA and Title VII age, race, and sex discrimination claims based on the theory of failure to promote are DISMISSED with prejudice.

4. Going forward, Ms. Butler-Charles may proceed with:

    a. her ADEA claim alleging age discrimination based on the theory of denial of a pay raise;

    b. her ADEA claim alleging age discrimination based on the theory of constructive discharge;

    c. her ADEA claim alleging a hostile work environment based on age;

    d. her Title VII claim alleging race discrimination based on the theory of denial of a pay raise;

    e. her Title VII claim alleging race discrimination based on the theory of constructive discharge;

    f. her Title VII claim alleging a hostile work environment based on race;

    g. her Title VII claim alleging sex discrimination based on the theory of denial of a pay raise;

h.  her Title VII claim alleging sex discrimination based on the theory of constructive discharge; and

i.  her Title VII claim alleging a hostile work environment based on sex.

The City's motion is DENIED as to those claims.

SO ORDERED.

/s/ Jessica D. Hedges
United States Magistrate Judge

DATED: April 21, 2026

18